```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

ERIC X. MARTINEZ,

                               Petitioner,

        -vs-

MICHAEL CAPRA, Superintendent, Sing
Sing Correctional Facility,

                               Respondent.

**No. 6:14-cv-06222-MAT
DECISION AND ORDER**

___

## I. Introduction

Pro se petitioner Eric X. Martinez ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being detained in Respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated as the result of a judgment of conviction entered against him on September 7, 2011, in the County Court of Ontario County, New York (Reed, A.J.), following a guilty plea to one count of first-degree rape (N.Y. Penal Law ("P.L.") § 130.35(1)) and two counts of forcible touching (P.L. § 130.52). Petitioner is currently serving an aggregate determinate prison term of 8½ years plus 18 years of post-release supervision.

## II. Factual Background and Procedural History

In the spring of 2011, an Ontario County grand jury returned a 14-count indictment charging Petitioner with various crimes related to his sexual violation of S.J.O., his girlfriend's

daughter; and S.H., a relative of S.J.O. The first three counts of the indictment pertained to his rape of S.J.O. on November 22, 2010, and the fourth and fifth counts related to his commission of sexually abusive acts, including forcible touching, against S.J.O. between August 31, 2010, and November 22, 2010. The remaining nine counts related to sexually abusive acts, including forcible touching, perpetrated against S.H. between October 1, 2010, and November 30, 2010.

On September 7, 2011, Petitioner entered a plea, under North Carolina v. Alford, 400 U.S. 25 (1970) ("Alford plea"), to the first, fourth, and sixth counts of the indictment, which respectively alleged the rape of S.J.O. on November 22, 2010, the forcible touching of S.J.O. on August 31, 2010, and the forcible touching of the other victim. In exchange for Petitioner's Alford plea, the prosecution recommended concurrent, determinate sentences of 8½ years for the rape conviction and 1 year for each forcible touching conviction, along with 18 years of post-release supervision.

During the proceedings, the prosecutor mentioned that Petitioner also was required to waive his appellate rights. Defense counsel went off the record to discuss the matter with Petitioner and, when the proceedings resumed, informed the trial court that Petitioner was "agreeable to" waiving his right to appeal. P.3-4.

During the plea colloquy,[1] the prosecutor reviewed the distinct appeal waiver but the trial court did not address the matter directly, saying instead, "We have a waiver of the right to appeal. We can talk about that at sentenc[ing][.]" P.16.

Petitioner reappeared later that same day for sentencing, at which time the trial court imposed the sentence that the prosecutor had recommended. When the trial court asked whether Petitioner had waived his right to appeal, the prosecutor indicated that "he did this morning[.]" S.4.[2]

Through counsel, Petitioner pursued a direct appeal of his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. Petitioner's appellate counsel raised the following claims: (1) Petitioner did not knowingly and intelligently waive his right to appeal; (2) the trial court abused its discretion under N.Y. Criminal Procedure Law ("C.P.L.") § 200.20(3)(a) in denying Petitioner's motion to sever the indictment; (3) the trial court's finding that Petitioner understood the Miranda warnings, on which it relied in finding his statement to police admissible, was inherently inconsistent with the decision to obtain courtroom interpreter for Petitioner; and

---

[1] Petitioner does not challenge the voluntariness of his guilty plea.

[2] Respondent indicates that he has been unable to obtain a copy of the written appeal waiver mentioned in the plea and sentencing transcripts.

(4) the sentence was harsh and excessive and should be reduced in the interest of justice.

The Fourth Department unanimously affirmed the conviction on April 26, 2013. People v. Martinez, 105 A.D.3d 1458, 963 N.Y.S.2d 916 (Mem) (4th Dep't 2013). The New York Court of Appeals denied leave to appeal on December 11, 2013. People v. Martinez, 22 N.Y.3d 1042 (2013).

This timely habeas petition followed, in which Petitioner raises the same claims asserted by appellate counsel in his brief on appeal to the Fourth Department. Respondent answered the petition and successfully moved to have the state court records filed under seal. Petitioner has submitted a response to Respondent's opposition to the petition. For the reasons discussed below, the Court finds that Petitioner is not entitled to a writ of habeas corpus.

**III. Merits of the Petition**

    **A.   Invalid Waiver of Appellate Rights**

Petitioner asserts that he is entitled to habeas relief because he did not knowingly and intelligently waive his right to appeal. In his appellate brief, Petitioner relied on New York State caselaw, in particular, People v. Lopez, 6 N.Y.3d 248 (2006). Lopez stated that "[w]hen a trial court characterizes an appeal as one of the many rights automatically extinguished upon entry of a guilty plea, a reviewing court cannot be certain that the defendant

comprehended the nature of the waiver of appellate rights." Id. at 256. Therefore,"[t]he record must establish that the defendant understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty—the right to remain silent, the right to confront one's accusers and the right to a jury trial, for example." Id. On direct appeal, the Fourth Department agreed with Petitioner that the trial court erred in failing to specifically address the appellate rights waiver with Petitioner and thus failed to take measures to ensure that he understood and validly waived his right to appeal. Martinez, 105 A.D.3d at 1458 (citations omitted). However, the Fourth Department concluded, all of Petitioner's substantive claims lacked merit or had been forfeited by his guilty plea. Id.

As Respondent argues, by determining that the waiver was invalid and then considering his substantive appellate claims, the Fourth Department granted Petitioner the only relief to which he was entitled. There is no further relief that this Court could grant to Petitioner. Accordingly, his claim based on the invalid appellate rights waiver is moot. See, e.g., In re Kurtzman, 194 F.3d 54, 58 (2d Cir. 1999) (explaining that a claim becomes moot "when it is impossible for the [federal] court to grant any effectual relief whatever to a prevailing party") (internal citations and quotation marks omitted).

### B.  Denial of Severance

Petitioner asserts entitlement to habeas relief based on the trial court's denial of his motion to sever the indictment pursuant to C.P.L. § 200.20(3)(a) and obtain three separate trials—one for the first three counts concerning S.J.O.'s rape on November 22, 2010; one for the fourth and fifth counts concerning the sexual abuse of S.J.O.; and one for the sixth through eleventh counts concerning the sexual abuse of S.H. Petitioner argued that because there was significantly more evidence in support of the rape charge and less evidence of the other charges, there was a strong possibility that jury would convict him based on the cumulative effect of the evidence. The trial judge rejected this argument and denied severance, finding that the jurors would be able to segregate the relatively uncomplicated evidence in accordance with the his instructions. On direct appeal, the Fourth Department declined to consider the merits of the severance claim on the ground that Petitioner had forfeited appellate review of it by pleading guilty.

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court." O'Sullivan v. Boerckel, 526 U.S. 838 (1999)  (citing 28 U.S.C. §§ 2254(b)(1), (c)). The Court finds that the denial of severance claim is unexhausted but must be deemed exhausted and found procedurally defaulted because Petitioner did not exhaust his State-court

remedies as required by the habeas statute. Specifically, Petitioner did not present his severance claim as a Federal constitutional claim but simply relied on New York State law when he raised it on direct appeal. See, e.g., Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001) ("To satisfy [28 U.S.C.] § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claims that he now urges upon the federal courts to the highest court in the pertinent state.") (internal quotation marks and citation omitted).

An unexhausted claim will be "deemed exhausted" when a petitioner has no available method of exhausting it in State court. Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (citing, inter alia, Castille v. Peoples, 489 U.S. 346, 351 (1989) (finding that "[t]he requisite exhaustion may nonetheless exist, of course, if it is clear that respondent's claims [that were not fairly presented] are now procedurally barred under [the state's] law")). Here, New York's procedural rules bar Petitioner from attempting to raise the denial of severance claim before the New York Court of Appeals, since he already has used the one direct appeal to which he is entitled. E.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y. 2010) (citing N.Y. R. Ct. § 500.20(a)(2), (d); other citations omitted). Collateral review of this record-based claim on a motion to vacate the judgment also is barred. See N.Y. Crim. Proc. Law § 440.10(2)(c) (barring collateral review if a claim could have

been raised on direct appeal of the conviction). Accordingly, the denial of severance claim must be deemed exhausted. Grey, 933 F.2d at 120-21. However, the State rule that leads to the claim's constructive exhaustion also creates a procedural bar to this Court's review. Id. at 121 (citations omitted).

To overcome the procedural default of the denial of severance claim, Petitioner "must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio, 269 F.3d at 90 (citing Coleman v. Thompson, 501 U.S. 722, 748-50 (1991)). Petitioner has not attempted to fulfill this burden, and the Court see no basis on the present record upon which to find cause and prejudice, or that a fundamental miscarriage of justice would occur if it declines to consider the claim. The denial of severance claim accordingly is dismissed as subject to an unexcused procedural default.

**C.  Erroneous Admission of Confession**

Petitioner claims, as he did on direct appeal, that the trial court erred in refusing to suppress his statement to the police, which was given without the assistance of an Spanish-language interpreter. Petitioner argues that much in the record suggests that he did not understand English at a level that would eliminate any doubt that, when he waived his rights, he fully understood what he was doing.

**1.     Background**

During the police investigation of S.J.O.'s rape, Petitioner was interrogated on November 22, 2010, by Investigator Jacqueline C. Falkey ("Inv. Falkey") of the Ontario County Sheriff's Office. By signing the "Voluntary Statement" form (SR.1-4), Petitioner agreed that he had been warned by Inv. Falkey of his Miranda rights.[3] Relevant portions of his statement to Inv. Falkey are excerpted below:

```
Q    So [redacted] accused you of touching [S.J.O.]
     Where did she say you touched her?
A    In the toto.
Q    What is toto?
A    [T]oto is the vagina, the private part.
Q    Did you touch [S.J.O.'s] vaginal area.
A    I think I did, I was watching a movie.
```

. . .

(SR.2). Petitioner explained that on the day he was accused of raping S.J.O., he had been cooking in the kitchen when S.J.O. returned home. He was wearing a shirt and boxers. (SR.2–3). After using the restroom, Petitioner went into S.J.O.'s bedroom, and the "next thing [he] remember[ed,] she was saying [his] name, [E]ric, [E]ric." (SR.3). Petitioner claimed that, although he remembered S.J.O. being on top of him, he did not know how she got there

---

[3] The form states in pertinent part, "I have been duly warned . . . that I have the right to remain silent and don't have to say anything if I don't want to; that anything I say can be used against me in a court of law; that I have the right to talk to a lawyer before making any statements and to have him here with me; that if I can't pay for a lawyer, one will be given to me before I make any statement, if I wish." (SR.1).

because he was focused on her face. (SR.3). Asked if he "forced himself" on S.J.O., Petitioner replied, "No, if someone forced themselves on someone they would yell[,] scream. That didn't happen." (SR.3). When asked what happened next, Petitioner said, "When I woke up I was sitting by the computer. [S.J.O.] was crying. I asked her what happened. She said she was cheating [sic].[4] I asked her who she was cheating [sic] with. She didn't say anything. I took her to her mother in Seneca Falls she was working. [S.J.O.] then said she was bored, so I took her to her grandparents and I went home. . . ." (SR.3). When asked how many times had he and S.J.O. had kissed, Petitioner replied, "[A] lot of kisses." (Id.). When asked if he had told his girlfriend (S.J.O.'s mother) that S.J.O. has a crush on him, Petitioner asserted that "everyone has told her that" and that she "has told [S.J.O.] to stay away from [him]." (Id.). Finally, Inv. Falkey asked him if he had ever had sex with S.J.O., and Petitioner responded, "That's what happened." (Id.). Petitioner stated that he dropped out of school in ninth grade and could read and write English "[a] little bit." (Id.). Petitioner signed the written statement.

At the suppression hearing, Inv. Falkey testified that she was asked to interview Petitioner based on some incriminating statements he had made earlier to Deputy Swartout; Deputy Swartout

---

4
Based on the context, it is likely that Petitioner said that S.J.O. was "chatting" on the computer, rather than "cheating" on the computer.

had encountered Petitioner at the hospital where S.J.O. was being examined based on her rape complaint. Inv. Falkey testified that Petitioner had told Deputy Swartout that "he had done something and that he needed help." (H.6). Inv. Falkey indicated that Petitioner had no problem understanding her when she spoke in English, and that he responded appropriately to her questions. (H.7). She admitted that she did not verify Petitioner could read English by asking him to read something out loud. However, Inv. Falkey pointed out, while he was reading the statement silently to himself, "[w]hen he reached page two and got to the tutu [sic] part," he "started laughing" and said, "'I didn't know you were going to put that part in there.'" (H.11-12, 20). Based on that, Inv. Falkey commented, Petitioner "obviously could read the [sic] English." (H.20).

In support of the suppression motion, defense counsel argued that Petitioner had "a language barrier" that precluded an effectual waiver of his constitutional rights. (H.24-25). Defense counsel asked the trial court to take judicial notice of the fact that Petitioner had an interpreter for every one of his court appearances. (H.24). Defense counsel argued that this language barrier obligated Inv. Falkey to call upon the Spanish-speaking deputy at the Sheriff's Office who they routinely used as an interpreter. (H.24-25).

The trial court issued a ruling on the record, denying the suppression motion. The trial court found, as a fact, that Inv. Falkey appropriately issued the Miranda warnings to Petitioner, that she "spoke with [petitioner] in English," and that "he responded appropriately in English[.]" (H.27). The trial court stated that even assuming that Petitioner was in custody, he "was properly advised of his Miranda rights before what could be construed as a custodial interrogation" and that the prosecution had "establish[ed] beyond a reasonable doubt that the statement was lawfully obtained within the confines of the testimony here." (H.28). The trial court found Inv. Falkey's "statements and details therein to be credible." (Id.).

On direct appeal, the Fourth Department rejected Petitioner's Miranda claim, holding that "[t]he [suppression] court's determination is entitled to deference and will not be disturbed where it is supported by the record." Martinez, 105 A.D.3d at 1458-59 (alteration in original). This ruling constitutes an adjudication on the merits for purposes of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs Petitioner's application for a writ of habeas corpus.

**2. Analysis**

Two of AEDPA's provisions, 28 U.S.C. § 2254(d)(2) and 28 U.S.C. § 2254(e)(1), deal with factual determinations by state courts. Relief is warranted under § 2254(d)(2) if the state court's

"adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(e)(1) provides that a state court's factual findings are presumed to be correct, unless the petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has "not yet 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)[.]'" Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015)(quoting Burt v. Titlow, 571 U.S. ----, ----, 134 S. Ct. 10, 15, (2013)). Of the two, Section 2254(e)(1) is "the arguably more deferential standard[.]" Wood v. Allen, 558 U.S. 290, 301 (2010). Even applying the arguably less deferential standard in Section 2254(d)(2), habeas relief is not warranted, as discussed further below.

Petitioner's claim regarding the invalidity of his Miranda waiver is based solely on what he characterizes as an "inherent inconsistency" between the trial court's factual finding that he could understand English well enough to effectively waive his rights, and the fact that a Spanish-language interpreter was used at every court appearance. Courts have found that the subsequent utilization of a foreign language interpreter at pre-trial and trial proceedings does not vitiate a findings that a defendant understood his rights and knowingly and intelligently waived them.

In <u>United States v. Abou-Saada</u>, 785 F.2d 1 (1st Cir.), <u>cert. denied</u>, 477 U.S. 908 (1986), for example, the court rejected the defendant's argument that the very fact he was provided an interpreter showed he possessed an inadequate knowledge of the English language to comprehend the <u>Miranda</u> warnings. <u>Id.</u> at 10; <u>see also</u> <u>United States v. Bernard S.</u>, 795 F.2d 749, 752 (9th Cir. 1986) (holding that juvenile's language difficulties, which necessitated use of interpreter at trial, did not preclude finding that he understood his constitutional rights and voluntarily waived them where he stated that he understood his rights and spoke mostly in English with government agent, although he occasionally spoke Apache with his mother and an officer to clarify some items); <u>Campaneria v. Reid</u>, 891 F.2d 1014 (2d Cir. 1989) (transcript of recorded interview showed that while petitioner spoke in broken English with an accent and occasionally lapsed into Spanish, his "command of English was sufficient for him to have understood the <u>Miranda</u> warnings given to him"), <u>cert. denied</u>, 499 U.S. 949 (1991). The Court finds that the use of the interpreter during Petitioner's court appearances, in and of itself, does not undermine the trial court's finding that Petitioner's English-language skills were sufficient.

Petitioner also points to his answer to a question about whether he was being treated for mental health; he replied, "I only have problems when I have to fill in papers." (P.8). He argues that

this does not square with Inv. Falkey's testimony that Petitioner read and understood his written statement. As the prosecutor argued at the suppression hearing, while Petitioner was reading over his statement, he "got a chuckle out of" Inv. Falkey using the word slang term "toto." When she asked him why he was laughing, he said to her, "'I didn't know you were going to put that part in there.'" (H.11-12, 20). A reasonable jurist could conclude that this showed Petitioner could sufficiently comprehend written and spoken English to knowingly waive his constitutional rights. Likewise, Petitioner sometimes answered questions himself, in English. For instance, at the plea hearing, the following exchange occurred:

> THE COURT: I need to give her some time to do that, so Monday will be the sentencing day.
> DEFENDANT MARTINEZ: Okay, perfecto.
> THE COURT: I need you to stay out of trouble between now and then. Have you had any disciplinary write-ups at the county jail?
> DEFENDANT MARTINEZ: Five of them.
> . . .

(P.13). A reasonable jurist likewise could conclude, based on the foregoing, that Petitioner's ability to speak and understand English was adequate.

In explaining the "substantial deference" owed to State-court factual determinations under Section 2254(d)(2), the Supreme Court has stated that "[i]f '"[r]easonable minds reviewing the record *might disagree*" about the finding in question, "on habeas review that *does not suffice* to supersede the trial court's . . . determination."'" Brumfield, 135 S. Ct. at 2276 (quoting Wood, 558

U.S. at 301 (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006); second alteration and ellipsis in original; emphases supplied). Here, even assuming for the sake of argument that reasonable minds reviewing the record might possibly disagree about the trial court's factual finding, that is plainly insufficient to allow this Court to overturn it and grant relief under Section 2254(d)(2). Petitioner's Miranda claim therefore is denied as without merit.

### D. Abuse of Discretion in Sentencing

As he did on direct appeal, Petitioner argues that trial court imposed an unduly harsh and severe sentence in light of the facts and circumstances of his case. Petitioner urged the Fourth Department should exercise its unique discretionary authority under State law to reduce his sentence in the interest of justice.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted). Petitioner's claim that his sentence was harsh and excessive does not set forth a Federal constitutional claim cognizable on habeas review, because his sentence was substantially less than the maximum provided for by New York State law. Klosin v. Conway, 501 F. Supp. 2d 429, 444-45 (W.D.N.Y. 2007) (citing Dorsey v. Irvin, 56 F.3d 425, 427 (2d Cir. 1995) (denying claim that the sentencing court violated due process by considering defendant's arrest record during sentencing) (citing White v.

Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam)). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White, 969 F.2d at 1383 (citation omitted). The Court therefore dismisses Petitioner's sentencing claim as not cognizable on habeas review.

**IV. Conclusion**

For the reasons stated above, petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   May 9, 2016
         Rochester, New York.